NLG, LLC v. Horizon Hospitality Very good. Good morning. Mr. Ramirez. Yes, good morning, Your Honors. May it please the court, I represent NLG, LLC in this appeal, which raises two discrete issues, Rockefellman and equitable mootness. We submit that because Rockefellman deprived the bankruptcy court of subject matter jurisdiction, this court need not reach the second issue. This litigation started as a simple residential foreclosure of a single family residence owned by a single defendant. But it's now going into its 10th year. The foreclosure action was filed in 2011. The appellees litigated in state court for four years. And in the end, their claims were rejected by multiple state judges and resulted in a very important order for our appeal, the order granting foreclosure and a final judgment of foreclosure in December 2015. On the day before the foreclosure sale, appellee Hassan filed her bankruptcy petition. And then her husband, through his company, Selective Advices Group, filed an adversary proceeding seeking to review and reject the state court foreclosure. For the past four years, five years now, we have been re-litigating in federal court the very same issues that appellees had lost in state court. This is precisely what the Rook Affirmative Doctrine is designed to prevent. Mr. Ramirez, can I ask you a couple of questions? First, if my memory is right, I had a hearing when I was sitting in for Judge Martinez a year and a half or two years ago. In one of the related cases, I don't think I issued any merits-based rulings, but I want to make sure that your recollection is the same as mine and that there aren't any issues from your perspective with my sitting on this case. I don't think there are from my end, but I certainly wanted to hear from you and from your opposing counsel. Judge, no, I don't have any problem. And I believe your attitude was that this case should be decided first, but you didn't issue any rulings and you didn't instruct the parties to do anything. The case is still pending in front of Judge Martinez at this point. Well, he was waiting for this appeal, but he's lifted the stay and he's scheduled a hearing now. Okay, and then so my other question on your Rooker, and you can answer it whenever you want during your remaining time is this. The argument or the rationale of the district court was, and maybe the bankruptcy court to some degree, was that it wasn't trying to upset any of the state court judgments, but rather trying to reconcile them. The foreclosure judgment, the judgment that had assigned a claim against your client to Horizon, so forth, the intervention judgment, et cetera, et cetera. So how do you respond to that contention? Well, Judge, the only way that, first of all, they never pled in their complaint that they wanted the court to reconcile anything. And I submit to you that if you read the order granting foreclosure, which, by the way, was totally ignored by the bankruptcy court and the district court, that 15-page order granting foreclosure did all the reconciliation necessary in this case. Judge Gordo, in her order, went through all those prior orders, and her order was the last in time. So if we apply the last in time doctrine established in the Roby case, we don't have anything that needs reconciliation. She went through, discussed the Lopez order, discussed the New York judgment by confession, discussed everything very thoroughly, and came to the conclusion that the judgment by confession should not be given any full faith and credit because of due process violation by the New York court when it entered the judgment. And let's remember, this judgment was entered when the plaintiff's, president of the plaintiff corporation, walked into the clerk's office of the New York Supreme Court and signed an affidavit saying they were the manager of NLG. That was totally false, and that judgment was a sham. The court, in deciding the issue, went through that judgment, went through the Lopez assignment order, and if she had been wrong, and I submit to you, it's possible that she could have been wrong, but the remedy was to go to the third district court of appeal, not to file an adversary proceeding in the bankruptcy court. In fact, after she filed for bankruptcy, without leave of the bankruptcy court, she did file an appeal, only to dismiss it two months later, and then this adversary was filed two months after that. So there's no issue with the timing of that. I submit to you that both appellees are state court losers, complaining of injuries caused by state court judgments rendered before the federal proceedings commenced, and inviting the bankruptcy court to review and reject those judgments. This case meets all the criteria that ExxonMobil set out. They have argued that Selective was not a party, but Selective appeared at least three times during 2015 in front of the court, not through her. Yeah, tried to intervene and was not allowed to. It seems to me it wasn't a party. It was a party under Florida law, Judge. In Florida law, that's a very formalistic, hyper-technical argument, because they were allowed to participate in any way, in every respect. They filed a motion to intervene, didn't they? And the state court denied it. They appeared three times before that, and they argued the merits of their claim. Were they ever formally made a party? They were not, Judge. In fact, they were told they couldn't be a party, right? At that point, they had satisfied the judgment, and under Florida law, you have to have a stake in the litigation. But the judge didn't stop there. The judge went on as if they were a party and took each and every argument that they had made and rejected all of them. So the only way that you could say that they were not a party is to close your eyes to all the facts in the case. On the Florida law, they're considered de facto parties, and we have cited case law in our brief that the police totally ignored. You can be a de facto party if you have control of the lawsuit. And they not only are tied in with the Hazan defendant, but they were there not to assert their own rights, but to assert rights to prevent our foreclosure. They argued all these orders that preceded, and the judge went through each and every argument as if they were parties. She could have just as easily said, well, we grant your motion to intervene, and then issued the order. It made no difference in the outcome of her decision. She went through and took all their arguments, and basically, when the bankruptcy court took up the same issues, the bankruptcy court just ignored the order granting foreclosure. They never discussed it. They never paid any lip service, and the district court also did not. Mr. Ramirez, I know you said at the beginning that we don't need to reach the second argument if we agree with you on the first, but could you take the last minute you have and discuss the district court's equitable mootness ruling? Well, Judge, as I stated in the briefs, there's no case that I have found where an individual can assert equitable mootness in a bankruptcy situation. But in this case, it's particularly easy for you to decide because there's nothing that needs to be undone on reversal. Under the Bennett case, there's nothing that needs to be unscrambled. We're not asking that any unsecured creditor discourage any money. We're not asking any secured creditor to discourage any money. We're a secured creditor, and the only ones that may be affected would be Chase, and they have not in any way shown that the court relied, that the Chase Bank relied on our judgment in order to approve the plan. They simply obtained relief and went back to the state court, and they never participated again in the bankruptcy. So I submit to you that nothing would have to be, if you reverse, nothing would have to be unscrambled upon remand. Judge Jordan, do you have any other questions? I don't, thank you. Judge Marcus, do you have any? Okay. Mr. Ramirez, you've saved five minutes for rebuttal. We'll hear from Mr. Bushell. Please, the court. Let me start with Ricker Feldman. Before you do that, Mr. Bushell, I don't recall whether you or Horizon were involved in the matter before Judge Martinez, which was one of the related cases, but I want to put the same question to you that I put to Mr. Ramirez about whether you think there are any problems with my sitting on this appeal, which was before Judge Moreno. I don't believe so, since Your Honor didn't decide anything in that case. So long as, I guess, nothing, as long as Your Honor believes that nothing in that case biases you in this case, I don't see why you couldn't sit on it since you did not render a decision, certainly not a decision that's on appeal here. All right. Thank you very much. Go ahead. So again, let me start with Rooker Feldman. As the court knows, the Supreme Court has repeatedly enjoined that it should be applied rarely. And the district court here held that this wasn't one of those rare cases for two independent reasons. First of all, as Judge Pryor pointed out, selective was not a party to the state court case that NLG claims was violated here. In fact, that was stipulated in the bankruptcy court that NLG wasn't, I'm sorry, that selective was not a party to that case. And the Supreme Court has gone even so far as to reject application of the doctrine, even when the non-party is in privity or represented by in the state court suit, none of which even applies here. So even in those situations, it doesn't apply. The only possible exception the Supreme Court has recognized is when it's possible maybe in a state of a party, which is a success or an interest, maybe then Rooker Feldman could apply. But otherwise, the Supreme Court has said it doesn't. So bottom line is selective is not a state court loser for the purposes of Rooker Feldman. And reinforcing that it had no right to appeal the foreclosure judgment under state law. So for that reason alone, the district court was correct in finding Rooker Feldman did not apply to this case. What NLG is asking is for this court to expand Rooker Feldman in a way that the Supreme Court has specifically said it should not by creating this concept of de facto parties, which don't exist under Rooker Feldman jurisprudence and don't exist under Florida law either. The second thing is, as Judge Jordan pointed out, is that the district court correctly found that neither did selective ask the bankruptcy court to set aside a state court judgment, nor did the bankruptcy court do so. In fact, the bankruptcy court recognized the state court judgment and simply found that the foreclosure judgment had been redeemed. It did not set aside that judgment whatsoever. And to respond to my colleague's argument that regarding pleading, if your honors review the third amendment complaint, it absolutely asked for reconciliation of all the orders. It mentioned all the orders, and it specifically asked the bankruptcy court to reconcile them. Moving on to equitable mootness. The district court correctly held that the appeal was equitably moot due to NLG's failure to timely seek and obtain a stay, resulting in the confirmation and substantial consummation of the plan, as well as the fact that reversing the final judgment would alter the plan to which the debtor and creditors agreed. In what way would that happen, Mr. Bushel? Well, the final judgment was specifically incorporated into the disclosure statement and the plan. It was supposed to provide an equity cushion for the secured creditors, as well as a potential fending mechanism for the plan. And so how would a reversal affect that? Well, it would no longer be the plan to which everyone agreed. You had secured creditors that didn't object to the plan, which, if this foreclosure judgment is reinstated, would have no security and are being paid out over time without any security. And they specifically agreed to a plan that did have security. How much money was paid out? Approximately $500,000. And how much was left to pay? At what point in time? You said that parties were expecting payments or payments were going to be made. Does that include and is it the sum total of the $500,000 that you said to Judge Marcus or was there other payments or anything else coming in the future? No, there's ongoing payments being made. So my question is, how much is left to be paid and how much is being paid over time? I don't know the exact amount, but it's over $100,000. But I don't know the exact amount that remains. And that's not even including. I'm not sure I understand your answer to Judge Jordan. There's over $100,000. That is what still remaining to be paid. Paid out. That remains to be paid out. Yes, there are payments. The bulk of the money has been paid out. I'm sorry. The bulk of the money has been paid out. I would I would say not because one of the parties to be paid under the plan is Chase Bank, which has a $4 million loan. So no, I would say that. So then there's got to be more than $100,000 left to be paid. Yes, that's that's correct. And I misspoke when I said at least $100,000. I was not thinking of Chase at that point. I was thinking of Valencia Estates, which is another creditor. So if you've got if you've got Chase with $400,000 and the approximately other $100,000 that maybe Valencia had, then you're you're basically saying that half of the plan amount has been paid and approximately half remains to be paid. At least half remains to be paid. Yeah. So how does this affect those payments? If Mr. Ramirez is right and we reverse on his first ground, how does that impact the plan? It removes the security for payments that that the creditors were promised in the plan. That's number one. Who's got the security now under the plan? That it's owned by the debtor. The property is owned by the debtor. And so the her equity interest in it secures payments to all these creditors. Sorry. OK. Secondly, there has been. Secondly, it also affects the debtor who agreed to make all these payments, for example, Valencia Estates Homeowners Association. She agreed to make all these payments to them over time based on her reliance that this was going to be her property. If she would have lost the property, she wouldn't have agreed to make all these payments to Homeowners Association for a home she doesn't live in. So it's going to so. That would also have to be undone. As well as, you know, she entered into into settlements based on the plan, as as was proposed and confirmed. You know, all these are it's like a contract. These are consensual agreements. She agrees to pay all these and do the understanding that she's going to have. The other terms of the plan are going to be in existence and she's going to get if she fulfills the plan, she gets a. A discharge, which. So all these things that, you know, it's like the courts have said it's a consensual arrangement. Each part is essential to it. And the second thing about the equity is, in addition to being security for this or for the secured creditors, it also was. Stated in the plan and disclosure statement as a potential funding source that if the debtor wasn't able to make payments that she could take a refinancing and that that would. Provide secure, you know. A funding mechanism for the plan and that wouldn't exist anymore. Yes. One final question about the plan. How approximately how long are these payments supposed to be ongoing until the debtor satisfies her obligations. Um, well, I know that. I mean, I can say it's a long period of time because one of the creditors is Chase Bank, which has a mortgage on mortgage loan on the property that the plan calls for her to pay out over the life of the mortgage loan, which is, I don't know the exact amount but it's over 10 years. Okay, thank you. And the district court was also correct in the remainder of its equitable mootness analysis because it correctly found that NLG did not seek a stay for nine months after this final judgment was entered. Uh, you know, this is while the debtor proposed a plan of reorganization proposal disclosure statement. The The court approved them. The ballots were coming in. The confirmation hearing was scheduled. Confirmation hearing went forward, and at the confirmation hearing the bankruptcy judge even said to NLG's counsel, you know, if you don't get a stay, your appeal might be moved and NLG still didn't do so for another four months later. So all this time all these things are going forward. There's no timely efforts to seek or obtain a stay and all these things go forward and that that was in favor of equitable mootness. There's also a district court found that the plan was substantially consummated. The property had revested in the reorganized debtor, she had assumed all obligations and management, and she had commenced distributions. In fact, more than $500,000 in distributions were made pursuant to the plan. And in another case, in fact, NLG conceded that the plan was substantially consummated. We've already discussed the effect on creditors. If there are no further questions, we would just ask that the court. Want to comment about his Arguments that jurisdiction is wanting either on the grounds of mootness or standing I think that's Mr bushels. I'm sorry. Oh, I I didn't follow that motion and I'm not I understood. They don't be argued. So, but try to argue. I've got it. Thanks. Okay. Thank you. Thank you, Mr. Bush. Mr Ramirez you say five minutes. Thank you. I'm good. There's no question that Selective advisors was a stake or loser. They had the right to appeal and they did not They definitely would be barred from racing the same issues again state court. So if this court is inclined to be Very formalistic in the approach to Rooker Feldman on the issue preclusion and claim preclusion, they're bound by The order granting foreclosure, which basically dealt with all their arguments, they were they argue that they they asked the court to reconcile The word reconcile does not appear in the third amendment complaint and the thrust of it is to determine the lean priority. That's what they prayed paid The court to determine in bankruptcy court. And that's something that the bank that had been determined in the order granting foreclosure and the final judgment of foreclosure. In fact, the final judgment in paragraph three says specifically that Energy has been Over superior to anybody else that's a defendant in the case, except perhaps chase Now as far as redemption. That never was split and never was argued never was tried. And in fact, I just came out of nowhere from the judges. Final judgment. And that was the first time we ever heard of redemption. You can't have a redemption before the final judgment. If that's the case, it would have been a payoff, not a redemption. The redemption is something that's given in the final judgment by the court. And it never happened here because they filed for bankruptcy. Now, as far as the 500,000 they keep throwing the money that figure around we dispute that the record does not support that argument of $500,000 most of the money that was spent by his hasten was spent with low paying lawyers and administrative fees. Can you tell me from this record. How much has been paid out and how much remains. Can we tell Yes, Judge. One of the largest unsecured creditors was J and urban, they were all $275,000 pursuant to a settlement agreement that was approved by the bankruptcy court. They have received nothing on that $275,000 the IRS payments are to last for 10 years. The, the payments have been minuscule and and it was not in any way supposed to be paid by the property that's an issue. Describe the half a million dollars paid out as being minuscule. No, half a million dollars has not been paid out, Judge. That's the problem. They paid six figures. Yes, but not With a number five in front, maybe a tops $300,000 that's compared to the amount of the entire state, which was in the millions. And that is a very small amount. May have missed that. I'm sorry. I may have misapprehended this I thought half a million was paid out, but that was only a small piece of what remained to be paid out. We had that we dispute that half a million dollars is supported by the record. The record supports. Many payments to counsel. And by the way, The debtor never use a debtor in possession account so that we could verify the payments. There were payments made cashier's checks from Mr me and not from Miss Hassan so We don't have any way to confirm how much she actually paid, but in her own schedules. They don't come anywhere near three 500,000 at most we came up with $318,000 of which 185 182,000 went to pre petition creditors. So we objected to the judge discharging the better we objected that the plan had been consummated We had a typo in one of our briefs where we did say we we agreed that it'd been consummated, but that was a mistake and we pointed that out. To the police, but they keep using our typo to say that we didn't object to to the consummation fact we Appeal that and we appeal the discharge and those are deals are pending resolution of this case, but they have to show that somebody relied on On our judgment and they can't do that because everybody else. They just haven't shown that and and we submit that this court should reverse and remand with instructions to his real estate or mortgage. Okay, Mr Ramirez, we have your argument and we're going to move to the last one. Thank you, Judge. Thank you. Thank you. Thank you, Mr.